[Cite as *State v. Roy*, 2015-Ohio-4959.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-986 |
| v. | : | (C.P.C. No. 14CR-3520) |
| Jamar N. Roy, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 1, 2015

*Ron O'Brien,* Prosecuting Attorney, and *Seth L. Gilbert,* for appellee.

*Cooper & Pennington Co., LPA, and Christopher M. Cooper,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Jamar N. Roy, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of one count of felonious assault, a felony of the second degree, and one count of assault, a misdemeanor of the first degree. For the following reasons, we affirm the judgment.

I. Facts and Procedural History

{¶ 2} On July 3, 2014, appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11, and one count of assault, in violation of R.C. 2903.13. The charges against appellant arise out of his encounter with two women, the victims, Kortney West ("Kortney") and Heidi West ("Heidi"), who are sisters.

{¶ 3} At the trial, Kortney testified that on the afternoon of June 16, 2014, she went home from work during her break to eat lunch and check on her sister, Heidi, who

was eight months pregnant at the time. (Tr. Vol. II, 43.) After finishing her lunch, Kortney went to her car to retrieve her cigarettes. While at her car, appellant approached in his car and parked. (Tr. Vol. II, 45.) Appellant has a son with Autumn Haley ("Haley"). Appellant was angry that Haley had not let him see his son the previous day, which was Father's Day. (Tr. Vol. II, 56-57.) As appellant stepped out of his car, Kortney talked to him and attempted to calm him.  (Tr. Vol. II, 71.)

{¶ 4}   Kortney further testified that appellant mistakenly believed that she and Haley were sisters and appellant demanded to know the whereabouts of Kortney's sister. Kortney warned appellant that if he did not calm down she would ask him to leave.  (Tr. Vol. II, 71.) Appellant repeatedly stated that he wanted to kill Haley. (Tr. Vol. II, 71.) Kortney then testified that her sister, Heidi, who was standing on the Wests' front porch, misheard appellant and believed appellant wanted to kill Kortney, not Haley, left the porch, approached appellant, and demanded he immediately leave. (Tr. Vol. II, 71, 113.)

{¶ 5}   Kortney then stated that appellant inquired about Heidi's identity before stating that he was " 'not afraid to hit a pregnant bitch.' " (Tr. Vol. II, 72.) Appellant then struck Heidi on the left cheek. Kortney stepped between appellant and Heidi and appellant then hit Kortney in the face four times. (Tr. Vol. II, 73.) Appellant also kicked Heidi in the stomach before fleeing the scene. (Tr. Vol. II, 74.) Heidi sustained a bruise on her face and Kortney suffered extensive injuries to her face, including a broken nose in 2 places and 17 fractures to her orbital bone, which required surgery. (Tr. Vol. II, 90.)

{¶ 6}   Wilma Sims and her daughter, Jazmin, live across the street from the Wests. They both testified that they were in a second floor bedroom and heard a car "screech" to a stop outside. (Tr. Vol. II, 131.) They walked to the window to investigate and saw Kortney and Heidi arguing with a man that the Sims did not know. They testified they saw the man hit Heidi and repeatedly hit Kortney. The man then drove away and the Sims ran outside to help. They both testified that neither saw Kortney throw a cigarette at the man, and Jazmin further testified that Kortney and Heidi were not smoking.

{¶ 7}   Appellant testified that he was at the apartment complex looking for Haley, who often stayed with her mother, who also lived in the apartment complex. (Tr. 250, 252.) However, according to appellant, he hit Kortney in the face three times, but only after she pushed him and "flicked" a lit cigarette in his face. (Tr. Vol. II, 258.) Appellant

testified that "[t]he cigarette in my face was provoking me." (Tr. Vol. II, 287.) Appellant denied that he hit or kicked Heidi. (Tr. 280.)

{¶ 8} Appellant requested a jury instruction on aggravated assault, which the trial court denied. The jury returned a verdict of guilty on both the felonious assault and misdemeanor assault. The trial court imposed a sentence of five years as to the felonious assault, and six months as to the misdemeanor assault, to be served concurrently at the Ohio Department of Rehabilitation and Corrections.

## II.  Assignments of Error

{¶ 9}  Appellant filed a timely notice of appeal and assigned the following errors:

> I. THE TRIAL COURT ERRED WHEN IT FAILED TO GIVE THE JURY AN INSTRUCTION OF THE LESSER-INCLUDED OFFENSE OF AGGRAVATED ASSAULT.
>
> II. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
>
> III. THE TRIAL COURT ERRED IN ADMITTING UNDULY PREJUDICIAL PICTURES OF THE VICTIM AFTER A STIPULATION OF SERIOUS PHYSICAL HARM.

## III.  First Assignment of Error

{¶ 10} In his first assignment of error, appellant asserts that the trial court erred when it failed to instruct the jury on the lesser included offense of aggravated assault.

{¶ 11}  We first note that, although appellant argues that the offense of aggravated assault is a lesser included offense of felonious assault, the offense of aggravated assault is an inferior degree offense of felonious assault. "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph two of the syllabus.[1] The elements of aggravated assault "are identical to or contained within the offense of felonious assault, coupled with the additional presence of one or both mitigating circumstances of sudden passion or a

---

[1] "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *Deem* at paragraph three of the syllabus, modified by *State v. Evans,* 122 Ohio St.3d 381, 2009-Ohio-2974.

sudden fit of rage brought on by serious provocation occasioned by the victim." *State v. Stewart*, 10th Dist. No. 10AP-526, 2011-Ohio-466, ¶ 7, citing *State v. Logan*, 10th Dist. No. 08AP-881, 2009-Ohio-2899, fn. 1, citing *Deem*. To warrant an aggravated assault instruction, a defendant must present sufficient evidence of serious provocation. *Deem* at paragraph four of the syllabus. "Serious provocation under R.C. 2903.12 means provocation 'reasonably sufficient to bring on extreme stress and * * * reasonably sufficient to incite or to arouse the defendant into using deadly force.' " *State v. Saur*, 10th Dist. No. 10AP-1195, 2013-Ohio-1674, ¶ 31, quoting *Deem* at paragraph five of the syllabus, approving *State v. Mabry*, 5 Ohio App.3d 13 (8th Dist.1982).

{¶ 12} In *Deem*, the Supreme Court of Ohio held that in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, the trial court must give an instruction on aggravated assault. *Id.* at 211. When a trial court charges a defendant with felonious assault and he requests an instruction on aggravated assault, an instruction is required when the evidence presented at trial reasonably supports both an acquittal in the charged crime of felonious assault and a conviction for aggravated assault. *State v. Shane*, 63 Ohio St.3d 630 (1992). Therefore, a jury instruction should be given for an inferior offense "if under any reasonable view of the evidence, and when all of the evidence is construed in a light most favorable to the defendant, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating circumstances." *State v. Rhodes*, 63 Ohio St.3d 613, 617-18 (1992), citing *State v. Wilkins*, 64 Ohio St.2d 382, 388 (1980).

{¶ 13} When reviewing a trial court's jury instructions, appellate courts determine whether the trial court's refusal to give a requested instruction constituted an abuse of discretion. *Stewart* at ¶ 9. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When a defendant requests an instruction on an inferior degree offense, the burden is on the defendant to persuade the fact finder of the mitigating circumstances of the offense. *Rhodes* at syllabus.

{¶ 14} Here, the trial court denied the request for an aggravated assault instruction because the trial court found appellant had failed to demonstrate sufficient evidence of

serious provocation necessary to warrant an instruction on aggravated assault. R.C. 2903.11(A)(1) defines felonious assault, in pertinent part, as follows: "No person shall knowingly * * * [c]ause serious physical harm to another." Aggravated assault is defined in R.C. 2903.12, which provides:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
>
> (1) Cause serious physical harm to another.

{¶ 15} To determine if the provocation was serious and reasonably sufficient to bring on sudden passion or a sudden fit of rage, the trial court uses a two-prong test that includes both an objective standard and a subjective standard. *Shane* at 634. The objective standard determines whether the alleged provocation was sufficient to bring on sudden passion or a sudden fit of rage. *Id.* If the objective standard is satisfied, the court uses the subjective standard to determine whether this particular defendant actually was under the influence of a sudden passion or in a sudden fit of rage. *Id.* Under the subjective standard, the court considers " '[the] emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.' " *Shane* at 634, quoting *Deem* at paragraph five of the syllabus. When a court examines whether provocation is reasonably sufficient to bring on a sudden passion or fit of rage, the provocation "must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.* at 635.

{¶ 16} In this case, the trial court made the determination that appellant was not provoked to a degree that was reasonably sufficient to bring on a sudden fit of rage. While appellant alleges that Kortney "flicked" a lit cigarette in his face, no other witness corroborates his story. Even construing the evidence in appellant's favor, and if Kortney did "flick" a cigarette in appellant's face, the trial court determined that no reasonable person would be so provoked as to use deadly force.

> THE COURT: * * * I have to decide whether as a matter of law a rational, reasonable human being would take that, [flicking of the cigarette] with no prior history of threats of violence, no prior animosity, no prior, quote, historically stormy

> relationship, * * * whether that's sufficient as a matter of law to constitute proof of provocation to a reasonable person. And I cannot find that at all. I can't even find it remotely close.

(Tr. Vol. II, 306.)

{¶ 17} In reaching its conclusion, the trial court relied on *Deem*. In *Deem*, the defendant was convicted of felonious assault after stabbing the victim. At trial, the defendant sought an instruction on aggravated assault, claiming that the victim "bumped" his car with her own car. *Id.* at 206-07. The Supreme Court held that, even with a previous "historically stormy relationship," the victim "bumping" the defendant's car was not sufficient serious provocation to warrant the use of deadly force. *Id.* at 211. Here, the trial court concluded that if a "historically stormy relationship" and "bumping" a car constitutes insufficient serious provocation in *Deem*, then "flicking" a lit cigarette is also insufficient provocation to the use of deadly force.

{¶ 18} Similarly, even if "flicking" a lit cigarette in someone's face constituted sufficient serious provocation to arouse a reasonable person into using deadly force, appellant failed to produce sufficient evidence that Kortney's actions constituted the trigger that provoked him into a sudden passion or sudden fit of rage. Appellant testified that it was Kortney flicking a cigarette in his face which "set [him] off." (Tr. Vol. II, 258.) He further stated, as follows:

> [W]hen I pulled up, I wasn't never mad at Kortney, you know? * * * I wasn't mad at Heidi. I was just mad about the events that took place before me going over there, and then the cigarette throwing in my face, the pushing, she's a woman, it didn't hurt me. But the cigarette, when the cigarette got thrown in my face, I was like -- it just set me off.

(Tr. Vol. II, 260-61.)

{¶ 19} However, the trial court determined that Kortney was not the target of appellant's rage but, rather, Haley was the actual target of appellant's rage. (Tr. 323.) Appellant testified he was angry with Haley for not letting him see his son on Father's Day. Appellant has not demonstrated that his rage was "brought on by serious provocation occasioned by the victim." R.C. 2903.12(A). Additionally, appellant admitted that he believed he used more force than what was appropriate in the situation. (Tr. 259-

60.) Accordingly, we find no error in the trial court's decision not to instruct the jury with regard to aggravated assault. Appellant's first assignment of error is overruled.

## IV.  Second Assignment of Error

{¶ 20} In his second assignment of error, appellant alleges that he was denied effective assistance of trial counsel because trial counsel made errors that were prejudicial and affected the outcome of the trial. Appellant argues that his trial counsel provided ineffective assistance by stipulating that Kortney suffered serious physical harm.

{¶ 21} In order to demonstrate that his counsel's representation was ineffective, appellant must demonstrate that: (1) counsel's performance was deficient, and (2) this deficient performance prejudiced the defense because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 687; 694 (1984), superseded by statute on other grounds. "A defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense." *State v. Mills*, 62 Ohio St.3d 357, 370 (1992).

{¶ 22} *Strickland* also recognized that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). It is a well-established principle that decisions regarding stipulations are matters of trial strategy and tactics. *State v. Rippy*, 10th Dist. No. 08AP-248, 2008-Ohio-6680, ¶ 16, citing *State v. Edwards*, 119 Ohio App.3d 106 (10th Dist.1997), citing *United States v. Teague*, 953 F.2d 1525 (11th Cir.1992). To be successful in his claim for ineffective assistance of counsel, appellant must overcome the presumption set forth in *Strickland*.

{¶ 23} We cannot say that trial counsel's decision to stipulate that Kortney suffered serious physical harm was not sound trial strategy. The parties discussed the stipulation on the record throughout the trial. (Tr. Vol. II, 13-20, 223-230.) By stipulating that Kortney suffered serious physical harm, the prosecution did not present the testimony of

Kortney's doctor regarding her injuries. The doctor's testimony would have provided in depth details regarding Kortney's injuries and surgery. Moreover, trial counsel informed the trial court that the defense was planning to pursue an aggravated assault conviction instead of felonious assault. Trial counsel stated, as follows: "We're looking for an Agg[ravated] Assault virtually, that's the case we're trying, we're not looking for a not guilty, we're not looking for self defense. We're looking for Agg[ravated] Assault." (Tr. Vol. II, 13.) Thus, trial counsel presented his trial strategy to the trial court at the beginning of trial.

{¶ 24} Finally, appellant argues that the stipulation occurred after the prosecution showed prejudicial pictures of Kortney's injuries to the jury. Appellant stipulating to serious physical harm does not automatically render the photographs inadmissible. *State v. Campbell*, 90 Ohio St.3d 320, 345 (2000); *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). Moreover, it is clear from the transcript of proceedings that the stipulation was announced after the photographs had been shown to the jury, however, the parties had previously agreed to the stipulation. Trial counsel informed the court that the defense was not contesting the degree of harm before opening statements occurred, as follows: "We're not going to contest the serious physical harm aspect, and we will stipulate the same, which will save the doc from having to come in." (Tr. Vol. II, 13.)

{¶ 25} Moreover, appellant has failed to demonstrate that the outcome of the trial would have been different. Kortney testified regarding her injuries, including a broken nose in 2 places and 17 fractures to her orbital bone, which required surgery. (Tr. Vol. II, 95.)  Without the stipulation, Kortney's doctor would have testified and presented further details of her injuries. Appellant has failed to demonstrate that the prosecution could not have proven serious physical harm without the stipulation.

{¶ 26} Appellant has failed to demonstrate that actions of trial counsel were not part of a sound trial strategy and that the outcome of the trial would have been different. Accordingly, appellant's second assignment of error is overruled.

## V. Third Assignment of Error

{¶ 27} In his third assignment of error, appellant alleges that the trial court erred by admitting prejudicial photographs of Kortney after trial counsel had already stipulated that Kortney suffered serious physical harm. This court reviews the admission of

photographic evidence under an abuse of discretion standard. *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 10. The admissibility of photographic evidence is subject to the balancing test established under Evid.R. 403(A), which provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Even if photos are gruesome, that does not "render them inadmissible if they otherwise satisfy the balancing test of Evid.R. 403(A)." *Albert* at ¶ 10, citing *State v. Ware*, 10th Dist. No. 04AP-43, 2004-Ohio-6984, ¶ 32.

{¶ 28} After reviewing the photographs, the trial court made a determination that their probative value outweighed any prejudicial effect they may have. The trial court found the photographs were not gruesome, as follows: "I do not find them gruesome to the point where prejudicial impact is greater than probative value." (Tr. Vol. II, 19.) Appellant argues that it was error to admit the photographs after a stipulation that Kortney suffered serious physical harm.

{¶ 29} However, as previously stated, a stipulation as to serious physical harm does not automatically render the photographs inadmissible. *Campbell* at 345; *Maurer* at 265. The trial court must still use the balancing test to determine the admissibility of the photographic evidence, even if there is a stipulation. *See United States v. Brady*, 595 F.2d 359 (6th Cir.1979). The prosecution did not use so many photographs as to render them repetitive or cumulative. They demonstrated the progression of Kortney's injuries over the few weeks following the incident.

{¶ 30} The trial court used the balancing test to determine the photographs were admissible. The trial court found that the pictures were not gruesome and added probative value to the prosecution's case. The trial court did not abuse its discretion in so finding. Accordingly, appellant's third assignment of error is overruled.

## VI. Disposition

{¶ 31} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and BRUNNER, J., concur.