[Cite as *State v. Roden*, 2018-Ohio-1269.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. John W. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2017CA00150 |
| MICHAEL JAY RODEN | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING: Criminal appeal from the Stark County Court of Common Pleas, Case No. 2017CR0312

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 30, 2018

APPEARANCES:

For Plaintiff-Appellee

JOHN D FERRERO
BY RONALD MARK CALDWELL
110 Central Plaza South
Canton, OH

For Defendant-Appellant

MARY G. WARLOP
116 Cleveland Avenue N.W.
500 Courtyard Centre
Canton, OH 44702

*Gwin, J.*

{¶1} Appellant Michael Jay Roden ["Roden"] appeals his convictions and sentence after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On the night of September 5, 2016, R.P. drove in search of her former boyfriend, Roden, who had broken up with her and was apparently seeing another woman. The pair broke up six to twelve months earlier. (T. at 187). The two had dated and had last lived together in 2015. T. at 185. R.P. drove to the home of Roden's brother. As R.P. walked up onto the front porch, Roden opened the door and punched her three times in the right eye, knocking her off the porch.

{¶3} R.P. picked herself up and went to a neighbor's door crying. This neighbor called 9-1-1, and the police quickly responded. Canton Police Officer Michael Lombardi approached the porch with his body camera activated and found R.P. yelling and screaming. Lombardi noticed that her right eye was badly swollen, that there was a fresh mark on her forehead, and that R.P.'s mouth was bloody. The officer noted that R.P. was intoxicated. Lombardi asked R.P. what had happened, and she told him that Roden came outside as she was on the porch and hit her three times in the face, knocking her off the porch. T. at 232. Lombardi then tended to R.P., who declined any medical treatment. Footage from Officer Lombardi's body camera was admitted into evidence. State's Exhibit 1. In the video R.P. stated that Roden punched her three times and pushed her down the stairs.

{¶4} The next day, R.P. went to the Aultman Hospital emergency room for treatment. While there, R.P. told medical staff that her injuries were caused by Roden punching her in the eye three times. T. at 203. The examination revealed that her right

eye socket had sustained a fracture that would require surgery. T. at 204. The prosecutor introduced photographs of R.P. and her medical records from that night. T. 196. State's Exhibits 2A-2D; 3.

**{¶5}** R.P. was subpoenaed to testify before the Grand Jury. However, R.P. testified that her injuries were caused not by Roden punching her, but by her falling off the cement porch and striking her head. R.P. testified that she told a different story to the grand jury because it was the truth, not because anyone had asked her or offered to pay her to tell a different story. T. at 220-221. R.P. acknowledged that although she and Roden had been broken up for six to twelve months, she still had feelings for him and they were still having sexual relations. T. 217-218. R.P. testified that she was angry on the night in question because she was hoping that they would reunite. T. 218. However, on the night in question she learned that Roden had started seeing someone else. T. 218. R.P. testified that after she learned of this she had become very intoxicated. T. 219. She went over to confront Roden. T. 219. She acknowledged that she felt that that night was an opportunity to get back at Roden. R.P. testified that that she was hurt and angry because Roden was seeing someone else. That is why she had told the story to the police officers and the hospital staff. T. 220.

**{¶6}** The Grand Jury returned an Indictment charging Roden with Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree and one count of Domestic Violence in violation of R.C. 2929.25(A) a felony of the fourth degree.

**{¶7}** R.P. then repeated the story that her injuries were caused by a fall in an affidavit that was prepared by Roden's lawyer, as well as during her trial testimony. She claimed that she was angry with Roden and just wanted to get back at him. T. 190-192,

198-199, 211-215,220, 221-223. R.P. admitted that she remained close with Roden's family, talking consistently with them. In addition, she testified that she blamed herself for even going to where Roden was in the first place. Finally, R.P. explained at trial that her memory of events that night did not come back to her until several days later. T. 205-206, 209-210, 215-216, 224.

{¶8}   The jury found Roden guilty of both counts. The trial court thereafter imposed a two-year prison term for both convictions, but merged the offenses for sentencing.

*Assignment of Error*

{¶9}   Roden raises one assignment of error,

{¶10} "I. THE JURY'S FINDING OF GUILT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Law and Analyses.*

{¶11} In his sole assignment of error, Roden argues that there was insufficient evidence to convict him of felonious assault and domestic violence. Roden further contends that the jury's findings are against the manifest weight of the evidence.

**STANDARD OF APPELLATE REVIEW.**

*1). Sufficiency of the Evidence.*

{¶12} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570

U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶13}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* Oh. Sup. Ct. No. 2016-1255, 2018-Ohio-22, 2018 WL 328882 (Jan. 4, 2018), ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

ISSUE FOR APPEAL

{¶14} A. Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crimes beyond a reasonable doubt."

{¶15} Roden was convicted of felonious assault and domestic violence. R.C. 2903.11(A) defines felonious assault as, "No person shall knowingly… (1) Cause serious physical harm to another or to another's unborn." Under R.C. 2901.01(A)(5), "serious physical harm to persons" means:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶16} R.C. 2919.25 (A), domestic violence states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶17} In the case at bar, R.P. testified that she received a fracture to her eye socket that would necessitate surgery to repair. Court's have noted that, "[t]he degree of harm that rises to level of 'serious' physical harm is not an exact science" given that the

definition uses terms such as "substantial," "temporary," "acute" and "prolonged." *State v. Miller*, 8th Dist. Cuyahoga No. 98574, 2013–Ohio–1651, ¶18, *quoting State v. Irwin*, 7th Dist. Mahoning No. 06MA20, 2007–Ohio–4996, ¶ 37; *Accord, State v. Clark*, 8th Dist. Cuyahoga No. 104076, 2016-Ohio-5143, ¶ 20 . The extent or degree of a victim's injuries is "normally a matter of the weight rather than the sufficiency of the evidence." *Irwin* at ¶ 37, *citing State v. Salemi,* 8th Dist. Cuyahoga No. 81091, 2002–Ohio–7064, ¶ 34. Fractures to the facial bones requiring surgery are sufficient to establish both "serious physical harm" and "physical harm." *See, State v. Roy,* 10th Dist. Franklin No. 14AP 986, 2015-Ohio-4959, ¶25; *State v. Chambers,* 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶24.

**{¶18}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Roden knowingly caused "serious harm" and "physical harm" to R.P.

**{¶19}** The term "family or household member'" is defined in R.C.  21919.25 (F) which states, in pertinent part,

(1) The term "family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i)     A spouse, a person living as a spouse, or a former spouse of the offender;

(ii)     A parent, a foster parent, or a child of the offender or another person related by consanguinity or affinity to the offender;

(iii)    A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(iv)    The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

**{¶20}** R.C. 2919.25 (F)(2) defines a "person living as a spouse" as: "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

**{¶21}** In the case at bar, the incident occurred on September 5, 2016. Evidence was unrefuted that the couple resided together in 2015.

**{¶22}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that R.P. was a person who had cohabited with Roden within five years prior to the date of the alleged commission of the crimes of felonious assault and domestic violence.

**{¶23}** We hold therefore that the state met its burden of production regarding felonious assault and domestic violence and, accordingly, there was sufficient evidence to support Roden's convictions.

*2). Manifest weight of the evidence.*

**{¶24}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the

evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting 5 Ohio Jurisprudence 3d, Appellate Review*, Section 60, at 191–192 (1978).

{¶25} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two

conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶26} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra,* 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

ISSUE FOR APPEAL.

{¶27} B. Whether the jury court clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶28} In the case at bar, Roden's defense centered upon the credibility of R.P. Roden argues that the statements made by R.P. days after the incident are credible; however R.P. statement's to Officer Lombardi and to the hospital personnel are not credible.

{¶29} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * *

such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶30}** In the case at bar, the jury heard the witnesses, viewed the evidence and heard Roden's attorney's arguments and explanations about Roden and R.P.'s actions. The jury also viewed a video that showed in real time R.P.'s statements, demeanor and injuries. Thus, a rational basis exists in the record for the jury's decision.

**{¶31}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Roden of felonious assault and domestic violence.

{¶32} Based upon the foregoing and the entire record in this matter we find Roden's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Roden's guilt.

{¶33} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Roden was convicted.

CONCLUSION.

{¶34} Roden's sole assignment of error is overruled.

{¶35} The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, J.,

Wise, P.J., and

Hoffman, J., concur