[Cite as *State v. Ferrell*, 2020-Ohio-6879.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-816 |
| | | (C.P.C. No. 18CR-2277) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Joshua S. Ferrell, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 24, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sarah V. Edwards*, for appellee. **Argued:** *Sarah V. Edwards.*

**On brief:** *The Tyack Law Firm Co., L.P.A., James P. Tyack*, and *Holly B. Cline*, for appellant. **Argued:** *James P. Tyack.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Joshua S. Ferrell, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of murder with an accompanying firearm specification. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} By indictment filed May 15, 2018, plaintiff-appellee, State of Ohio, charged Ferrell with one count of murder in violation of R.C. 2903.02, an unclassified felony; and one count of felony murder in violation of R.C. 2903.02, an unclassified felony, with an underlying offense of felonious assault, in violation of R.C. 2903.11. Both charges contained accompanying three-year firearm specifications pursuant to R.C. 2941.145(A). The charges

related to the shooting death of Mario DiPenti on May 2, 2018. Ferrell entered a plea of not guilty.

{¶ 3} At a trial beginning October 15, 2019, the state played for the jury video footage obtained from a neighbor's home surveillance systems and a neighbor's cell phone video from May 2, 2018 showing Ferrell confronting DiPenti on the street between their houses, initiating a physical fight, and, during the altercation, pointing a gun at DiPenti's head before ultimately firing one shot into DiPenti's chest. Though the men lived in the same neighborhood, they did not know each other until the day before the shooting. The sole issue at trial was whether Ferrell acted in self-defense.

{¶ 4} Ferrell testified he met DiPenti for the first time around 8:40 p.m. on May 1, 2018 when Ferrell honked his car horn after seeing DiPenti driving fast on the residential streets of their neighborhood. After he honked, Ferrell said DiPenti got out of his car and walked toward Ferrell's car, so Ferrell said he got out of his own car and the two men yelled at each other. Ferrell testified that DiPenti appeared intoxicated and described him as belligerent, and he took a photograph of DiPenti's license plate with the intention of reporting DiPenti to the police. Ferrell testified that DiPenti had already been gesturing like he was going to hit Ferrell, so Ferrell said he started to walk toward his car. According to Ferrell, DiPenti quickly came up beside him as he was walking away, so Ferrell punched DiPenti in the jaw causing DiPenti to stagger and fall down.

{¶ 5} Ferrell testified he punched DiPenti because he believed DiPenti was going to attack him. Another neighbor who witnessed the altercation, Stacey Dennis, testified that the two men were "up in each other's face" arguing in the street and that Ferrell punched DiPenti within one minute of getting out of his car. (Tr. Vol. 2 at 340.) Dennis additionally testified that DiPenti hardly moved during the interaction and that he never "[came] at" Ferrell. (Tr. Vol. 2 at 340.)

{¶ 6} After punching DiPenti in the face, Ferrell testified he got back in his car and called 911. While he was still on the phone with the 911 dispatcher, Ferrell said he returned home, and he saw DiPenti drive by his house and yell threatening things at him. This incident was captured on video by the home surveillance system of another neighbor, Michael Smith. The surveillance system captured only video, not audio, but the state played for the jury a recording of DiPenti driving by Ferrell's house on the night of May 1, 2018.

Several minutes later, the surveillance system captured video of DiPenti returning to Ferrell's house on foot and momentarily walking partially up Ferrell's driveway, talking to Ferrell, and pointing down the street where the earlier incident took place.

{¶ 7}    While DiPenti was in the street exchanging words with Ferrell, Officer Donald Gibson of the Valleyview Police Department drove down the street.  Officer Gibson was in the neighborhood before beginning his shift, but he stopped his police cruiser when he saw DiPenti wave and yell at him.  Officer Gibson testified that DiPenti and Ferrell were "berating each other" over the earlier incident, so Officer Gibson told DiPenti to relax and go home.  (Tr. Vol. 2 at 311.)  At that time, Ferrell began to walk toward the police cruiser as he continued to argue with DiPenti, and Officer Gibson testified he told Ferrell to stay in his yard or go inside.  Ferrell did not go inside, but Officer Gibson said Ferrell retreated from the street and stood under his carport.  Officer Gibson then drove away but could still hear the two men arguing, so he called Columbus Police to ask if he needed to stay on the scene.  After learning Columbus Police had already dispatched officers to the location, Gibson got back in his cruiser and left the neighborhood, encountering DiPenti again on his way out and telling DiPenti to return home.

{¶ 8}    At approximately 9:30 p.m. that night, Officer Nicholas Sands of the Columbus Division of Police responded to Ferrell's earlier call.  Officer Sands testified that Ferrell told him that DiPenti "was coming up to his house, kind of peering in through the windows, banging on the door, generally being a nuisance, and that his behavior continued and continued."  (Tr. Vol. 3 at 382.)  The surveillance camera footage, however, shows DiPenti never approached the windows of the Ferrell home, only entering Ferrell's property one time when he walked halfway up the driveway.  Ferrell told Officer Sands that he wanted to press charges against DiPenti, and Officer Sands testified that if the behavior continued, Ferrell should stay inside and call 911.

{¶ 9}    Officer Sands testified he then went down the street to talk to DiPenti, who he said appeared intoxicated.  After speaking to DiPenti for a few minutes and telling him to stay away from Ferrell, Officer Sands said he left DiPenti's home.  As he was leaving the scene, Officer Sands said that Ferrell had walked down the street to be sure that Officer Sands had followed-up with DiPenti.  There was not a police report filed from this incident.

{¶ 10} The next morning, May 2, 2018, Smith's security cameras captured two different angles of an encounter between Ferrell and DiPenti beginning at 9:27 a.m. when DiPenti drove past Ferrell's house. The video shows Ferrell run out of his house almost immediately when DiPenti's car pulls into view and Ferrell begins to yell at DiPenti. DiPenti exited his car and walked toward Ferrell in the street. The two men are seen arguing and pointing down the street toward their argument from the night before, and Ferrell then slapped DiPenti's hand. DiPenti began walking toward his car and Ferrell toward his house, but Ferrell then turns around and engages in the argument again. For approximately one minute, the men go in and out of view of the two cameras, continuing to argue, until the surveillance footage shows Ferrell follow DiPenti to his car and DiPenti gets in the car and drives away.

{¶ 11} Later that day, Ferrell and DiPenti had their final encounter. Smith's security camera again captured the encounter, and Smith's daughter also recorded another vantage point of the encounter with her cell phone. The cell phone video has audio, but the security camera footage does not.

{¶ 12} The security camera video shows DiPenti, who is shirtless and wearing only shorts and sandals, walk down the sidewalk by Ferrell's house, linger on the sidewalk and street for a few minutes, and then walk back in the direction of his own home. As DiPenti is walking back toward his house, Ferrell came outside his house, walked down the driveway, and confronted DiPenti in the middle of the street. Immediately upon reaching DiPenti, Ferrell swung his fist at DiPenti, who was able to dodge the punch and turn around to run away. The video shows Ferrell chase DiPenti and grab DiPenti's left arm, at which point DiPenti turns around to face Ferrell and the two men argue and point wildly.

{¶ 13} Ferrell then lunged at DiPenti and put his arms around DiPenti's neck. The two men became entangled and fell to the ground. Once they fell to the ground, DiPenti moved on top of Ferrell and began punching Ferrell with his right arm. Ferrell testified that he told DiPenti to stop multiple times and repeatedly yelled at DiPenti that he had a gun, but that DiPenti did not stop. The cell phone video then shows Ferrell pull out a gun and place it against DiPenti's head, approximately 25 seconds after Ferrell initiated the confrontation in the street. Ferrell held the gun against DiPenti's head for nearly 10 seconds while the two men continue to argue. Their words are largely unintelligible on the video,

but DiPenti then asks if Ferrell "really" has a gun, to which Ferrell responded "[y]es, I got a fucking gun.  Get the fuck off me."  (State's Ex. L at :28-31.)

{¶ 14}  After Ferrell moved the gun away from DiPenti's head, the two men remained tangled together, fighting.  Ferrell testified that DiPenti was reaching for his gun, although the video does not show DiPenti's hands ever go near Ferrell's gun.  During the struggle, Ferrell was able to roll up on knee briefly before falling back to the ground entangled with DiPenti.  The videos show the altercation as one continuous struggle and, approximately 10 seconds after Ferrell moved the gun away from DiPenti's head, Ferrell lifted the gun to DiPenti's chest and fired one shot.  DiPenti slumped forward and Ferrell moved out from underneath him, went into his house to get his cell phone, and called 911.  The entire encounter, from the time Ferrell came out of his house to the time he shot and killed DiPenti, lasted less than 1 minute.  From the time Ferrell lunged at DiPenti to the time he shot him, less than 30 seconds elapsed.

{¶ 15} While on the phone, Ferrell walked back outside.  The state played a recording of the 911 call for the jury.  When the 911 dispatcher asked what was going on, Ferrell responded "I shot a man."  (Tr. Vol. 3 at 399.)  The dispatcher asked him why, and Ferrell said "[s]elf-defense.  He was on top of me and I pulled a gun out, told him to get off of me and he didn't get off of me."  (Tr. Vol. 3 at 399.)

{¶ 16}  Ferrell testified that once DiPenti had him pinned on the ground, he told DiPenti to stop and then told DiPenti he had a gun, but that DiPenti continued to hold him down and strike his head.  Ferrell further testified that after he told DiPenti he had a gun, DiPenti then pressed his thumbs into Ferrell's eyes and held them there, so Ferrell said that is why he pulled his gun out the first time and pressed it against DiPenti's head.  Ferrell's wife, Heather, testified she watched the final encounter between DiPenti and her husband, and she could see DiPenti pushing his thumbs into her husband's eyes.  In both of the two video recordings of the final encounter between the two men, neither Ferrell's face nor DiPenti's thumbs are visible at the time frame Ferrell alleged DiPenti was gouging his eyes with his thumbs.

{¶ 17}  When police officers responded to the scene after Ferrell's 911 call and took Ferrell into police custody, police asked Ferrell if he was injured.  Ferrell told police his heart was racing and his knees were scraped, but he did not mention any injury to his eyes.

Additionally, police photographed Ferrell while in police custody, and the photographs of Ferrell's face did not show the typical physical findings of eye-gouging injuries, such as bruising, swelling, or dried blood around the eyes.  The parties also stipulated that a DNA analysis of swabs taken from underneath DiPenti's fingernails on both of his hands only found DNA matching DiPenti's DNA profile.

{¶ 18} Ferrell additionally testified he was "literally scared" of DiPenti after his multiple encounters with him and felt a need to protect his family from DiPenti.  (Tr. Vol. 4 at 557.)  He further testified that he tried to escape during the final encounter but that DiPenti pulled him back and reached for his gun, and at that point Ferrell testified he believed DiPenti was going to take his gun and kill him, so Ferrell shot DiPenti to defend himself.  DiPenti's autopsy revealed DiPenti had alcohol, cocaine, and a benzodiazepine in his system at the time he died.

{¶ 19} At the conclusion of the presentation of evidence, the trial court instructed the jury on the elements of self-defense.  Following deliberations, the jury found Ferrell guilty of Count 2 of the indictment, felony murder, with the underlying offense of felonious assault, as well as the accompanying firearm specification.  The jury was unable to reach a verdict as to Count 1, murder, and the trial court declared a mistrial as to that count.

{¶ 20} Following a November 26, 2019 sentencing hearing, the trial court entered a nolle prosequi as to Count 1 at the state's request and sentenced Ferrell to 15 years to life for the felony murder conviction plus an additional 3 years for the firearm specification, for a total aggregate prison term of 18 years to life in prison.  The trial court journalized Ferrell's conviction and sentence in a November 27, 2019 judgment entry.  Ferrell timely appeals.

## II. Assignments of Error

{¶ 21} Ferrell assigns the following errors for our review:

> [1.] The trial court instructed the jury that an "initial aggressor" is per se prohibited from using physical force in self-defense under any circumstances, which is legally incorrect. Mr. Ferrell was thereby deprived of his federal and Ohio constitutional rights to a jury trial under the "beyond a reasonable doubt" standard of proof and the requirement that the State prove all the essential elements—including absence of self-defense— beyond a reasonable doubt for a murder conviction.

[2.] The trial court erred in failing to give, *sua sponte*, an instruction on involuntary manslaughter as an inferior degree offense of felony murder, with aggravated assault as the predicate offense, to the jury.

[3.] The cumulative effect of errors violated Mr. Ferrell's federal and state constitutional due process rights to a fair trial.

[4.] The cumulative effect of trial counsel's failures deprived Mr. Ferell of his rights to a fair trial, the effective assistance of counsel, and due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

[5.] The trial court erred and thereby deprived Mr. Ferrell of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by overruling Mr. Ferrell's motions for judgment of acquittal and adopting the jury's finding of guilt as to murder and the corresponding gun specification, as the evidence at trial was insufficient to support Mr. Ferrell's conviction.

[6.] The jury erred in finding Mr. Ferrell guilty of felony murder (Count II) and the corresponding gun specification as the verdict was against the manifest weight of the evidence, thereby depriving Mr. Ferrell of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.

## III. First Assignment of Error – Self-Defense Instruction

{¶ 22} In his first assignment of error, Ferrell argues the trial court erred in instructing the jury on self-defense. More specifically, Ferrell asserts the trial court erred in failing to instruct the jury on the revival of the right to use force in self-defense for an initial aggressor who withdraws from the conflict in good faith.

{¶ 23} Ordinarily, a trial court has discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion. *State v. Lipkins*, 10th Dist. No. 16AP-616, 2017-Ohio-4085, ¶ 28, citing *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 127. Here, however, the parties agree that Ferrell did not request an instruction premised on the restoration of the right to

use force after a good faith withdrawal for an initial aggressor. Thus, Ferrell has waived all but plain error. *Id.*, citing *Teitelbaum* at ¶ 99, citing *State v. Cook*, 65 Ohio St.3d 516, 527 (1992).

{¶ 24} "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68. For an error to be "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 25} Prior to March 28, 2019, Ohio law deemed self-defense an affirmative defense, requiring a defendant to prove the elements of self-defense by a preponderance of the evidence. *See, e.g., State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 45, citing *State v. Martin*, 21 Ohio St.3d 91, 93 (1986). To establish self-defense prior to March 28, 2019, a defendant was required to prove (1) he was not at fault in creating the situation giving rise to the affray, (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape was the use of such force, and (3) he did not violate any duty to retreat or avoid the danger. *Lindsey* at ¶ 45, citing *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. To be entitled to the affirmative defense of self-defense, a defendant may use only as much force as is reasonably necessary to repel the attack. *Lindsey* at ¶ 45, citing *State v. Harrison*, 10th Dist. No. 06AP-827, 2007-Ohio-2872, ¶ 25, citing *State v. Jackson*, 22 Ohio St.3d 281 (1986). "The elements of self-defense are cumulative, and '[i]f the defendant fail[ed] to prove *any one* of these elements * * * he has failed to demonstrate that he acted in self-defense.' " (Emphasis sic.) *Lindsey* at ¶ 45, quoting *Jackson* at 284.

{¶ 26} Effective March 28, 2019, however, following revisions to R.C. 2901.05, a defendant no longer bears the burden of establishing the elements of self-defense by a preponderance of the evidence. R.C. 2901.05(B)(1); *see also State v. Carney*, 10th Dist. No. 19AP-402, 2020-Ohio-2691, ¶ 31. Instead, the self-defense statute now "place[s] the

burden on the prosecution to disprove at least one of the elements of self-defense beyond a reasonable doubt." *Carney* at ¶ 31. Specifically, R.C. 2901.05(B)(1) provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

Thus, the current version of R.C. 2901.05(B)(1) requires the state "to disprove self-defense by proving beyond a reasonable doubt that [the defendant] (1) was at fault in creating the situation giving rise to the affray, OR (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape, OR (3) did violate a duty to retreat or avoid the danger." *Carney* at ¶ 31; *see also State v. Daley*, 10th Dist. No. 19AP-561, 2020-Ohio-4390, ¶ 39.

{¶ 27} Here, the trial court instructed the jury on the elements of self-defense and further instructed the jury that "the State must prove beyond a reasonable doubt that the defendant did not use deadly force in the self-defense." (Tr. Vol. 4 at 640.) Though recognizing the longstanding principle that a person generally is not justified in using physical force if he was the initial aggressor, Ferrell argues the trial court's self-defense instruction was nonetheless incomplete because it did not contain an additional instruction on the restoration of the right to use self-defense to the initial aggressor.

{¶ 28} As the Supreme Court of Ohio has stated, "[e]ven though the accused may in the first instance have intentionally brought on the difficulty and provoked the occasion, yet his right of self-defense will revive and his actions will be held justifiable upon the ground of self-defense in all cases where he has withdrawn from the affray or difficulty in good faith as far as he possibly can, and clearly and fairly announced his desire for peace." *State v. Melchior*, 56 Ohio St.2d 15, 21 (1978). In reviewing *Melchior*, the United States Sixth Circuit Court of Appeals found that "[i]n order for an initial aggressor to withdraw and regain the right to act in self-defense, he or she must clearly manifest a good faith

intention to withdraw from the affray and must remove any just apprehension of fear the original victim may possess." *Melchior v. Jago*, 723 F.2d 486, 493 (6th Cir.1983).

{¶ 29} The evidence presented at trial, in particular the video evidence of the fatal encounter, did not support an instruction on the revival of Ferrell's right to use deadly force in self-defense. Instead, the evidence demonstrated that Ferrell was the aggressor, initially at fault for the encounter, and that he never withdrew. Despite Ferrell's attempts to describe the fatal encounter as having a distinct middle point in which he announced his intention to withdraw from the affray, the video recording shows the encounter was one continuous, rather brief incident. The video shows Ferrell walk directly and deliberately toward DiPenti and immediately swing his fist at DiPenti's face. A few seconds later, Ferrell charges toward DiPenti, and the two become entangled and fall to the ground. Although Ferrell testified he was trying to get away once DiPenti was on top of him, the video recording shows Ferrell never removed any just apprehension of fear in DiPenti from the affray that Ferrell initiated. Mere seconds passed before Ferrell brandished his gun the first time; mere seconds more passed before Ferrell shot and killed DiPenti.

{¶ 30} Further, although Ferrell asserts that placing his gun against DiPenti served as his intention to retreat from the initial encounter, his argument ignores that by brandishing his gun, Ferrell only escalated the situation rather than removed any just apprehension of fear DiPenti possessed. *See, e.g., State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831, ¶ 25-27 (defendant did not act in self-defense where, after becoming involved in a fight with people at a party, defendant ran to a van, retrieved his gun, and started firing shots, and "[t]he weight of the evidence indicates that [defendant] was the aggressor and escalated the confrontation by retrieving his shotgun and being the first to shoot"). The video recording of the incident demonstrates that Ferrell confronted DiPenti aggressively in the street with the intention of physically fighting with him. That Ferrell soon found himself outmatched did not restore his right to use deadly force in self-defense for a situation he created and from which he never sufficiently withdrew.

{¶ 31} For these reasons, we find the evidence at trial did not support an additional instruction on the revival of self-defense for an initial aggressor, and, thus, the revival instruction would not have affected the outcome of Ferrell's trial. *See State v. Johnson*, 10th Dist. No. 06AP-878, 2007-Ohio-2792, ¶ 64 (where the evidence indicates that giving

the requested instruction would not have affected the outcome of the trial, the trial court does not commit plain error by failing to provide the instruction). We also note that, to the extent Ferrell argues the trial court's failure to provide the revival instruction somehow affected the state's burden of proof, the trial court fully and appropriately instructed the jury on the state's burden of proof. Thus, the trial court did not err, let alone plainly err, in failing to give an instruction on the revival of the right to use force in self-defense to an initial aggressor. We overrule Ferrell's first assignment of error.

## IV. Second Assignment of Error – Inferior Degree Offense Instruction

{¶ 32} In his second assignment of error, Ferrell argues the trial court erred in failing to give an instruction on involuntary manslaughter as an inferior degree offense of felony murder, with aggravated assault as the predicate offense. Ordinarily, an appellate court reviews a trial court's refusal to instruct the jury on a lesser-included offense under the abuse of discretion standard. *State v. Coleman-Muse*, 10th Dist. No. 15AP-566, 2016-Ohio-5636, ¶ 8. However, Ferrell did not request an involuntary manslaughter instruction at trial, so we review his contention that the trial court should have sua sponte given the instruction for plain error. *State v. Dennis*, 10th Dist. No. 04AP-595, 2005-Ohio-1530, ¶ 14, citing *State v. Goodwin*, 84 Ohio St.3d 331, 347 (1999).

{¶ 33} "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *State v. Roy*, 10th Dist. No. 14AP-986, 2015-Ohio-4959, ¶ 11, citing *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph two of the syllabus. Here, the indictment charged Ferrell under Count 2 with felony murder based on the predicate offense of felonious assault. Felony murder, as defined in R.C. 2903.02(B), provides "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." By contrast, involuntary manslaughter, as defined in R.C. 2903.04(A), provides "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." This court has previously found involuntary manslaughter is a lesser-included offense of felony murder. *State v. Crockett*, 10th Dist. No. 14AP-242, 2015-Ohio-2351, ¶ 28, citing *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-

2284, ¶ 79. The difference between felony murder under R.C. 2903.02(B) and involuntary manslaughter under R.C. 2903.04(A) thus hinges on the predicate offense.

{¶ 34} An instruction on a lesser-included, or inferior degree, offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included or inferior degree offense. *State v. Anderson*, 10th Dist. No. 06AP-174, 2006-Ohio-6152, ¶ 39, citing *State v. Carter*, 89 Ohio St.3d 593, 600 (2000); *see State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, ¶ 34 (a trial court "must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense").

{¶ 35} In deciding whether to provide a lesser-included offense instruction, the trial court must consider both the state's evidence and the defense's evidence, and it must view the evidence in the light most favorable to the defendant. *Anderson* at ¶ 39; *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 37. An instruction on a lesser-included offense is not warranted, however, every time "some evidence" is presented to support the lesser offense. *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 84. The court must find "sufficient evidence" to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included, or inferior degree, offense. *Id.* For example, "a defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction 'if the evidence on whole does not reasonably support an acquittal on the murder offense and a conviction on a lesser offense.' " *Id.*, quoting *State v. Willis*, 8th Dist. No. 99735, 2014-Ohio-114, ¶ 51.

{¶ 36} The issue, therefore, is whether the evidence presented at trial supported both an acquittal as to the charged offense of felony murder with a predicate offense of felonious assault and a conviction of involuntary manslaughter with aggravated assault as the predicate offense. As noted above, the key distinction between felony murder and involuntary manslaughter is the predicate offense. R.C. 2903.11(A)(1) defines felonious assault as "[n]o person shall knowingly * * * [c]ause serious physical harm to another." As relevant here, R.C. 2903.12 defines aggravated assault as "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the

person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another."

{¶ 37} This court has found that the offense of aggravated assault is an inferior degree offense of felonious assault. *Roy* at ¶ 11. "The elements of aggravated assault 'are identical to or contained within the offense of felonious assault, coupled with the additional presence of one or both mitigating circumstances of sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim.' " *Id.*, quoting *State v. Stewart*, 10th Dist. No. 10AP-526, 2011-Ohio-466, ¶ 7. Thus, to warrant an instruction on the inferior degree offense of aggravated assault, a defendant must present sufficient evidence of serious provocation occasioned by the victim. *Roy* at ¶ 11, citing *Deem* at paragraph four of the syllabus. "Serious provocation under R.C. 2903.12 means provocation 'reasonably sufficient to bring on extreme stress and * * * reasonably sufficient to incite or to arouse the defendant into using deadly force.' " *State v. Saur*, 10th Dist. No. 10AP-1195, 2013-Ohio-1674, ¶ 31, quoting *Deem* at paragraph five of the syllabus.

{¶ 38} Ferrell maintained throughout the trial that he acted in self-defense. This court has observed that " ' "[e]vidence supporting the privilege of self-defense, i.e., that the defendant feared for his own personal safety, does not constitute sudden passion or fit of rage." ' " *State v. Collins*, 10th Dist. No. 19AP-373, 2020-Ohio-3126, ¶ 51, quoting *State v. Harding*, 2d Dist. No. 24062, 2011-Ohio-2823, ¶ 43, quoting *State v. Stewart*, 10th Dist. No. 10AP-526, 2011-Ohio-466, ¶ 13. Moreover, having explained in our resolution of Ferrell's first assignment of error that the video evidence was clear that Ferrell was the initial aggressor in the affray and did not make a good faith effort to withdraw, Ferrell cannot show the evidence would support a finding that he acted under serious provocation occasioned by the victim. *See State v. Marcum*, 7th Dist. No. 04 CO 66, 2006-Ohio-7068, ¶ 51 (defendant's account of events that he either fired warning shots or fired in self-defense is not consistent with sudden rage or sudden passion brought on by serious provocation); *see also State v. Bouie*, 8th Dist. No. 108095, 2019-Ohio-4579, ¶ 47 ("it has been held that in most cases, jury instructions on both self-defense and serious provocation are inconsistent" because "the mental states of fear as required for self-defense and rage as required for aggravated assault are incompatible"); *State v. Caldwell*, 10th Dist. No. 98AP-165, 1998 Ohio App. LEXIS 6220 (Dec. 17, 1998) ("the difficulty in attempting to argue both

provocation, as is necessary for voluntary manslaughter, and self-defense is that to an extent those defenses are inconsistent"). Ferrell repeatedly testified he was afraid of DiPenti and feared for his safety during the final encounter with him on May 2, 2018, but " '[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.' " *Collins* at ¶ 52, quoting *State v. Mack*, 82 Ohio St.3d 198, 201 (1998).

{¶ 39} Finally, to the extent Ferrell argues the culmination of his several encounters with DiPenti over May 1 and 2, 2018 constituted serious provocation causing him to eventually act out of sudden passion or a sudden fit of rage, we note that "past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." *State v. Collier*, 10th Dist. No. 09AP-182, 2010-Ohio-1819, ¶ 15, citing *Mack* at 201. Ferrell specifically testified he did not shoot DiPenti because of what happened on the evening of May 1, 2018, and he further specifically testified he did not shoot DiPenti because of what happened the morning of May 2, 2018. Instead, Ferrell reiterated, as he repeatedly testified throughout the trial, that he shot DiPenti because he was afraid. Thus, Ferrell's own testimony did not support, and at times undermined, any claim he now makes, for the first time on appeal, that he acted out of sudden passion or fit of rage. *See Collins* at ¶ 52.

{¶ 40} Because the record did not contain evidence that would reasonably support an acquittal on felony murder but a conviction on involuntary manslaughter, Ferrell was not entitled to an instruction on the inferior degree offense of involuntary manslaughter. As such, the trial court did not err, let alone plainly err, in failing to sua sponte instruct the jury on involuntary manslaughter. We overrule Ferrell's second assignment of error.

## V. Third Assignment of Error – Cumulative Effect of Errors

{¶ 41} In his third assignment of error, Ferrell argues the cumulative effect of the errors at his trial violated his constitutional due process rights to a fair trial and require reversal. In particular, Ferrell asserts the arguments he presented under his first and second assignment of error, when considered together, rendered his trial unfair and warrant reversal.

{¶ 42} Although errors at trial singularly "may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a

defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. However, we have already determined in our resolution of Ferrell's first and second assignments of error that the trial court did not err in not providing additional instructions on the revival of the right to use force in self-defense to an initial aggressor or in not providing an instruction on the inferior defense of involuntary manslaughter. Ferrell cannot establish he is entitled to relief under the doctrine of cumulative error simply by combining his unsuccessful claims together. *State v. Hodson*, 10th Dist. No. 18AP-242, 2019-Ohio-1734, ¶ 50; *State v. Moore*, 10th Dist. No. 11AP-1116, 2013-Ohio-3365, ¶ 61 (where a case presents "no errors to cumulate," the doctrine of cumulative errors does not apply). Thus, we overrule Ferrell's third assignment of error.

## VI. Fourth Assignment of Error – Ineffective Assistance of Counsel

{¶ 43} In his fourth assignment of error, Ferrell argues he received the ineffective assistance of counsel. More specifically, Ferrell asserts his counsel was ineffective in failing to file written proposed jury instructions and in failing to request an instruction on involuntary manslaughter.

{¶ 44} In order to prevail on a claim of ineffective assistance of counsel, Ferrell must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Ferrell to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. If Ferrell can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id*. To show prejudice, Ferrell must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id*. at 694.

{¶ 45} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Ferrell contends his trial counsel was ineffective in (1) failing to file written self-defense instructions; and (2) failing to request an instruction on involuntary manslaughter as an

inferior degree offense of felony murder. Additionally, Ferrell asserts the cumulative effect of counsel's alleged errors rendered his trial counsel ineffective.

### A. Failure to File Written Jury Instructions

{¶ 46} Ferrell's first allegation of ineffective assistance of counsel is his trial counsel's failure to file written proposed jury instructions on self-defense. As Ferrell notes, Crim.R. 30(A) provides that any party may file written requests for specific jury instructions. Ferrell asserts there is no feasible trial strategy that would support not filing written proposed jury instructions. *See, e.g.*, *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 77 ("[t]actical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel"). Though Ferrell argues his counsel's failure to file written objections constituted a waiver of an objection to the instructions, the Supreme Court has held that a party does not waive an objection, and the error is preserved for appeal, " 'when the defendant objects in accordance with the second paragraph of Crim.R. 30(A), whether or not there has been a proffer of written jury instructions in accordance with the first paragraph of Crim.R. 30(A).' " *Mack* at 200, quoting *State v. Williford*, 49 Ohio St.3d 247 (1990), paragraph three of the syllabus.

{¶ 47} During the trial, the parties engaged in lengthy discussions about the self-defense instruction, including Ferrell's trial counsel's attempt to persuade the court that the recent changes to R.C. 2901.05(B)(1) required to disprove all of the elements of self-defense, rather than just one. Thus, Ferrell's claim that his counsel's failure to file written requested jury instructions somehow affected his trial counsel's ability to fully discuss the jury instructions with the court lacks merit.

{¶ 48} Additionally, to the extent the true aim of Ferrell's first allegation of ineffective assistance of counsel is to compel reversal for his trial counsel's failure to request a revival instruction, we explained in our resolution of Ferrell's first assignment of error that the trial court fully instructed the jury on self-defense and the evidence did not support an additional instruction on the revival of the right to use force in self-defense to an initial aggressor. *State v. Glenn-Coulverson*, 10th Dist. No. 16AP-265, 2017-Ohio-2671, ¶ 57 (trial counsel is not deficient in failing to request an instruction that the evidence does not warrant). Therefore, Ferrell's trial counsel's failure to file written requested jury

instructions and failure to request a revival instruction does not constitute deficient performance, and, thus, does not substantiate a claim for ineffective assistance of counsel.

### B.  Failure to Request Inferior Degree Offense Instruction

{¶ 49}  Ferrell's second allegation of ineffective assistance of counsel is his trial counsel's failure to request an instruction on the inferior degree offense of involuntary manslaughter.  Again, however, we already determined in our resolution of Ferrell's second assignment of error that the evidence at trial did not warrant an instruction on the inferior degree offense of involuntary manslaughter.  Ferrell's trial counsel was not deficient for failing to request an instruction the evidence did not support.  *Glenn-Coulverson* at ¶ 57.  Moreover, we are mindful that as a general rule, the decision of whether or not to request a particular jury instruction is a matter of trial strategy and, for that reason, will not substantiate a claim of ineffective assistance of counsel.  *Glenn-Coulverson* at ¶ 56.  Here, Ferrell maintained he acted in self-defense throughout the duration of the trial, and his trial counsel's decision not to request an instruction on involuntary manslaughter was reasonable given that the instruction would have contradicted Ferrell's theory of how the events unfolded.  Thus, Ferrell's counsel was not deficient for failing to request an instruction on involuntary manslaughter.

### C.  Cumulative Effect of Errors

{¶ 50}  Ferrell finally argues that even if we conclude none of the above alleged errors are sufficient to find ineffective assistance of counsel standing alone, the cumulative effect of these errors nonetheless resulted in Ferrell being denied a fair trial.  However, having determined that neither of Ferrell's allegations of ineffective assistance of counsel constituted deficient performance by his trial counsel, and thus failed to satisfy the first prong of the *Strickland* analysis, Ferrell does not demonstrate error, let alone cumulative error.

{¶ 51}  For these reasons, Ferrell is unable to demonstrate he received the ineffective assistance of counsel.  We overrule Ferrell's fourth assignment of error.

## VII.  Fifth Assignment of Error – Sufficiency of the Evidence

{¶ 52}  In his fifth assignment of error, Ferrell argues the evidence at trial was insufficient to support his conviction of felony murder.

{¶ 53} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 54} Ferrell argues the state presented insufficient evidence to sustain his conviction of felony murder. However, Ferrell does not argue that the state failed to produce evidence to establish all the essential elements of this offense. Rather, Ferrell argues that his testimony establishes he shot and killed DiPenti in self-defense. This argument presents a challenge to the manifest weight of the evidence, the subject of Ferrell's sixth assignment of error. *See State v. Reynolds*, 10th Dist. No. 18AP-560, 2019-Ohio-2343, ¶ 33, citing *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 21 (noting "the manifest-weight standard is the proper standard of review" for an accused's contention that the evidence supports a claim of self-defense "because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself from culpability"). Though Ferrell argues the recent changes to R.C. 2901.05 must implicate sufficiency because the burden of disproving self-defense now rests with the state, the crux of Ferrell's argument in this regard is that his claim of self-defense should have been believed despite the state's video evidence of the fatal encounter. *See, e.g., State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 ("in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). Such an argument presents a challenge to the manifest weight of the evidence, not the sufficiency of the evidence. *Id.*

{¶ 55} Having reviewed the record, we find there was sufficient evidence to support Ferrell's conviction of felony murder. We overrule his fifth assignment of error.

**VIII. Sixth Assignment of Error – Manifest Weight of the Evidence**

{¶ 56} In his sixth and final assignment of error, Ferrell argues his conviction is against the manifest weight of the evidence.

{¶ 57} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 58} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 59} Ferrell argues his conviction is against the manifest weight of the evidence because the jury clearly lost its way in not believing his claim of self-defense. Essentially, Ferrell asserts that both his testimony and the video recordings of the fatal encounter demonstrate he acted in self-defense. However, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version. *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43 (rejecting defendant's argument that his conviction was against the manifest weight of the evidence because the jury did not believe his claim of self-defense), citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. As we noted above, the trier of fact remains

free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21. Despite Ferrell's attempts to characterize his final encounter with DiPenti as one in which Ferrell was defending himself, the video clearly shows that Ferrell was the initial aggressor and that he never withdrew from the fray. Thus, in light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in concluding Ferrell did not act in self-defense when he shot and killed DiPenti.

{¶ 60} We conclude, therefore, that the manifest weight of the evidence supports Ferrell's conviction of felony murder. Accordingly, we overrule Ferrell's sixth and final assignment of error.

## IX. Disposition

{¶ 61} Based on the foregoing reasons, the trial court did not err in instructing the jury on self-defense, the trial court did not err in failing to instruct the jury on the inferior degree offense of involuntary manslaughter, the doctrine of cumulative errors does not apply to warrant reversal, Ferrell did not receive the ineffective assistance of counsel, and the sufficiency of the evidence and the manifest weight of the evidence support Ferrell's conviction of felony murder. Having overruled Ferrell's six assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BEATTY BLUNT, JJ., concur.