[Cite as *State v. Eddy*, 2022-Ohio-3965.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

CALEB EDDY,

    DEFENDANT-APPELLANT.

CASE NO. 1-22-17

O P I N I O N

Appeal from Lima Municipal Court
Trial Court No. 21CRB01452

Judgment Affirmed

Date of Decision:  November 7, 2022

APPEARANCES:

    *Thomas J. Lucente Jr.* for Appellant

    *Joseph C. Snyder* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Caleb Eddy ("Eddy") appeals the judgment of the Lima Municipal Court, alleging that his conviction is against the manifest weight of the evidence and that the trial court erred in stating the law on self-defense at his bench trial. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Eddy and S.P. were in a relationship and resided together. Tr. 5. After S.P. and Eddy had an argument on July 8, 2021, S.P. removed the house key from Eddy's key chain without his knowledge. Tr. 6. S.P. later explained that she took this house key because Eddy had packed his belongings and because she believed that he was about to move out of the house. Tr. 22, 24. She further testified that she wanted him to leave but that he remained at the house that night. Tr. 22.

{¶3} On July 9, 2021, S.P. and Eddy had another argument. Tr. 5-6. At some point, Eddy removed himself from the argument and went outside. Tr. 17. He then came back into the house, having decided to leave the premises. Tr. 18. As he prepared to leave, Eddy realized that the house key was missing. Tr. 18. He then went into the bedroom to locate the house key and began rummaging through S.P.'s purse. Tr. 18. S.P. then went into the bedroom after Eddy. Tr. 18.

{¶4} When S.P. entered into the bedroom, Eddy was facing away from her. Tr. 8. S.P. testified that she came alongside Eddy and attempted to stop him from

getting her house key from her purse. Tr. 7-8. She stated that Eddy pushed her away but that she then returned to his side and reached again for her house key. Tr. 7-8. S.P. stated that Eddy then pushed her away again and stated that this second push was more forceful than the first. Tr. 8. In response, S.P. pushed Eddy back. Tr. 9. Eddy and S.P. then began struggling with each other. Tr. 9.

{¶5} Eddy then managed to pin S.P. down with her back on the bed and her feet on the floor. Tr. 9. S.P. testified that she went into "defense mode" and started trying to scratch his face. Tr. 9. She recounted, at this point, grabbing Eddy's testicles as "hard as * * * [she] could" because she believed "that [this] would get him off of [her] * * *." Tr. 10. She testified that, in response, Eddy lifted her up off of the bed "and slam[ed her] * * * to the floor." Tr. 10.

{¶6} S.P. testified that Eddy then "g[o]t on top of [her] * * * and pin[ned her] * * * down." Tr. 11. She then stated the following:

> **He put his knee into my right shoulder and held my left arm down to the ground with his left hand. And drew his hand back like he was going to punch me. And at that point, I quit fighting cuz I couldn't move.**
>
> **\* \* \***
>
> **I completely gave up and just told him to get off of me. I just kept yelling for him to get off of me. Until he finally, after maybe, I don't know, maybe forty seconds or so, he finally got off of me.**

Tr. 11, 12. S.P. stated that she got up; grabbed her phone; went into a spare bedroom; called 9-1-1; and reported the altercation to the dispatcher. Tr. 12-13.

{¶7} S.P. then called her friend, Joelene Sibeneck ("Sibeneck"), and recounted the events of that evening. Tr. 14, 25. On Sibeneck's recommendation, S.P. locked herself in the bathroom while Sibeneck and her husband drove to S.P.'s house. Tr. 14, 26. Sibeneck then took S.P. from her house to a local Urgent Care for a medical examination. Tr. 14. A police officer met S.P. at the Urgent Care and took a statement from her about this incident. Tr. 29.

{¶8} On July 30, 2021, complaints were filed that alleged that Eddy had committed the offense of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and the offense of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. Doc. 1-2. On January 28, 2022, both S.P. and Sibeneck testified at a bench trial on these charges. Doc. 16. Tr. 5, 25. The Defense then made Crim.R. 29 motions to challenge both charges. Tr. 31. On January 31, 2022, the trial court issued judgment entries that found Eddy not guilty of domestic violence under R.C. 2919.25(A) and guilty of assault in violation of R.C. 2903.13(A). Doc. 16-17.

{¶9} Eddy then filed his notice of appeal on February 24, 2022. Doc. 18. On appeal, he raises the following two assignments of error:

**First Assignment of Error**

**The trial court erred when it stated the law of self-defense required defendant to retreat.**

**Second Assignment of Error**

**Appellant's conviction were against the manifest weight of the evidence and contrary to law.**

For the sake of analytical clarity, we will consider Eddy's second assignment of error before his first assignment of error.

*Second Assignment of Error*

{¶10} Eddy argues that the trial court erred in concluding that the State carried the burden of establishing that Eddy did not act in self-defense. He asserts that his conviction is, therefore, against the manifest weight of the evidence.

Legal Standard

{¶11} In a manifest weight analysis, "an appellate court determines whether the state has appropriately carried its burden of persuasion." *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist. 1997). "Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict." *State v. Richey*, 2021-Ohio-1461, 170 N.E.3d 933, ¶ 29 (3d Dist.), quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.).

{¶12} Accordingly, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997). Appellate courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'** *State v. Brentlinger*, **2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting** *Thompkins* **at 387.**

*State v. Schatzinger*, 3d Dist. Wyandot No. 16-20-04, 2021-Ohio-167, ¶ 52.

**{¶13}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

**{¶14}** Assault in violation of R.C. 2903.13(A) occurs where a person "knowingly cause[s] or attempt[s] to cause physical harm to another * * *." R.C. 2903.13(A). However, under Ohio law, "[a] person is allowed to act in self-defense." R.C. 2901.05(B)(1). "Self-defense is an affirmative defense." *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 43 (8th Dist.). "The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself." *State v. Chavez*, 3d Dist. Seneca Nos. 13-19-05, 13-19-06, and

13-19-07, 2020-Ohio-426, ¶ 39, quoting *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 15.

{¶15} Self-defense through the use of non-deadly force is present where:

**(1) the accused was not at fault in creating the situation giving rise to the affray, (2) the accused (even if mistaken) had a bona fide belief that he was in imminent danger of any bodily harm; and (3) the only means to protect himself from such danger was the use of force not likely to cause death or great bodily harm.**

*Chavez* at ¶ 40, citing *State v. Vu*, 10th Dist. Franklin No. 09AP-606, 2010-Ohio-4019, ¶ 10; *Ohio Jury Instructions*, CR Section 421.19 (Rev. Oct. 11, 2008). *See State v. Barker,* 2d Dist. Montgomery No. 29227, 2022-Ohio-3756, ¶ 24; *State v. Elam*, 12th Dist. Butler No. CA2021-08-106, 2022-Ohio-1895, ¶ 13.

{¶16} As to the first element of self-defense, "Ohio courts have long recognized that a person cannot provoke [an] assault or voluntarily enter an encounter and then claim a right of self-defense." *State v. Woodson*, 6th Dist. Lucas No. L-21-1068, 2022-Ohio-2528, ¶ 82, quoting *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002 WL 126973, *3 (Jan. 22, 2002). This means

**the defendant must not be at fault in creating the situation that gave rise to the affray. *Nichols* at \*9-10. This concept is broader than simply not being the immediate aggressor. *Id*. at \*10. A person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense. *Id*.; *State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 156 N.E.3d 281, 2020-Ohio-3762, ¶ 27.**

*State v. Elam*, 12th Dist. Butler No. CA2021-08-106, 2022-Ohio-1895, ¶ 14. The defendant must not have "engaged in such wrongful conduct toward his assailant

that the assailant was provoked to attack the defendant." *State v. Gillespie*, 172

Ohio App.3d 304, 2007-Ohio-3439, 874 N.E.2d 870, ¶ 17 (2d Dist.).

**{¶17}** R.C. 2901.05 places the burden on the State "to disprove at least one

of the elements of self-defense beyond a reasonable doubt." *State v. Cervantes*, 3d

Dist. Henry No. 7-21-06, 2022-Ohio-2536, ¶ 59, quoting *State v. Carney*, 10th Dist.

Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

> **'[U]nder the current version of R.C. 2901.05(B), the state is not required to prove the defendant did not act in self-defense until the defendant introduces evidence that tends to support they acted in self-defense.'** *State v. Walker***, 6th Dist. Lucas No. L-20-1047, 180 N.E.3d 60, 2021-Ohio-3860, ¶ 61. 'In other words, the defendant maintains the burden of production on their self-defense claim before the state inherits the burden of persuasion.'** *Id.***, citing** *State v. Petway***, 11th Dist. Lake No. 2019-L-124, 156 N.E.3d 467, 2020-Ohio-3848, ¶ 55.**

*Cervantes* at ¶ 60. "The elements of self-defense are cumulative, and a defendant's

claim of self-defense fails if any one of the elements is not present." *State v. Ridley*,

1st Dist. Hamilton No. C-210458, 2022-Ohio-2561, ¶ 15.

Legal Analysis

**{¶18}** Neither party disputes that the standard for self-defense through non-

deadly force is applicable in this case. On appeal, Eddy argues that the State

"provided no evidence" that disproves an element of self-defense through the use of

non-deadly force. Appellant's Brief, 9. In response, the State argues that it

disproved the first element of this affirmative defense. This first element requires

that the defendant "not [be] at fault in creating the situation [that] g[ave] rise to the affray * * *." *Chavez, supra*, at ¶ 39, 40.

**{¶19}** At trial, the State called S.P. as a witness. Tr. 5. She testified that, immediately preceding the altercation, Eddy had gone into the bedroom and was trying to get her house key from a key ring that was in her purse. Tr. 6. S.P. stated that she "walked to the side of him [Eddy] to try to reach around to grab * * * [her] keys." Tr. 8. She testified that Eddy then pushed her away. Tr. 8. S.P. testified that she returned to Eddy's side and that he then shoved her away. Tr. 8. She stated that Eddy applied more force the second time that he pushed her. Tr. 8. S.P. said that she then pushed Eddy back and that the "fight escalated" with the two of them "throwing punches at each other." Tr. 9.

**{¶20}** S.P.'s testimony indicates that Eddy initiated the physical altercation as he was the first one to use force in this case. Tr. 6, 8. Her testimony also indicates that Eddy increased the amount of force that he used on her when he shoved her a second time. Tr. 8. This testimony could persuade a reasonable finder of fact that Eddy "was at least partially at fault for creating the situation giving rise to the affray * * *." *Woodson, supra*, at ¶ 82. *See Chavez, supra*, at ¶ 40. *See also State v. Clemmons*, 2d Dist. Montgomery No. 23237, 2010-Ohio-3109, ¶ 43; *State v. Garrison*, 9th Dist. Summit No. 12676, 12746, 1987 WL 8477, *1; *State v. McElroy*,

11th Dist. Trumbull Nos. 2002-T-0115 and 2002-T-0116, 2003-Ohio-6762, ¶ 31.[1]

Since the State only needs to carry the burden of persuasion on one element of self-defense, we need not consider the other elements of self-defense in this analysis.

{¶21} Accordingly, we find Eddy's argument—that the State "provided no evidence" to disprove an element of self-defense through non-deadly force—to be without merit. Appellant's Brief, 9. Having examined the record, we conclude that the evidence presented in this case does not weigh heavily against the trial court's determination that the State disproved at least one element of self-defense. Thus, Eddy has failed to establish that his conviction is against the manifest weight of the evidence. His second assignment of error is overruled.

*First Assignment of Error*

{¶22} Eddy argues that the trial court incorrectly applied the legal standard for self-defense through deadly force instead of the legal standard for self-defense through non-deadly force.

Legal Standard

{¶23} R.C. 2901.01(A)(2) defines "Deadly Force" as "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). *See State v. Kucharski*, 2d Dist. Montgomery No. 20815, 2005-

---

[1] We are aware that *Garrison* and *McElroy* address the application of self-defense through deadly force. *Garrison, supra,* at *1; *McElroy, supra,* at ¶ 29, 31. However, the first element for self-defense through deadly force and the first element for self-defense through non-deadly force are the same. *Chavez, supra*, at ¶ 39, 40. Both require that "the accused was not at fault in creating the situation giving rise to the affray * * *." *Id*. Thus, the examination of fault in these cases shapes our understanding of how fault should be analyzed where an argument for self-defense is raised.

Ohio-6541, ¶ 21 ("[T]he use of nondeadly force, by definition, presents no risk of loss of life * * *."). Self-defense through the use of deadly force is applicable as an affirmative defense where:

> **(1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force; and (3) the accused must not have violated any duty to retreat or to avoid the danger.**

*Chavez* at ¶ 39, quoting *State v. Thacker*, 3d Dist. Marion No. 9-03-37, 2004-Ohio-1047, ¶ 14. In contrast, self-defense through the use of non-deadly force is applicable as an affirmative defense where:

> **(1) the accused was not at fault in creating the situation giving rise to the affray, (2) the accused (even if mistaken) had a bona fide belief that he was in imminent danger of any bodily harm; and (3) the only means to protect himself from such danger was the use of force not likely to cause death or great bodily harm.**

*Chavez* at ¶ 40. *See also State v. Jordan*, 1st Dist. Hamilton No. C-210603, 2022-Ohio-2566, ¶ 56. Thus, "there is *no* duty to retreat in cases involving non-deadly force." (Emphasis sic.) *Id.*, citing *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 24 (2d Dist.).

## Legal Analysis

{¶24} In this case, after the bench trial had concluded, the trial court analyzed S.P.'s testimony. The trial court noted that "he [Eddy] did not have to pick her [S.P.] up and slam her on the floor; that, "[w]hen he [Eddy] was on top of her, he

could've let her up and walked away"; that "there were times when the defendant was in control of the situation and did not walk away"; and that Eddy "knew that * * * at any point in time, he could walk away." Tr. 47-48. Eddy argues that these statements indicate that the trial court believed that he had a duty to retreat in this case and that the trial court, therefore, incorrectly applied the legal standard for self-defense through deadly force in this case.

**{¶25}** However, these identified statements, in fact, represent the application of the legal standard for self-defense through non-deadly force to the circumstances of this case. The contents of the Ohio Jury Instructions ("OJI") show the connection of these statements to the first element of self-defense through non-deadly force. *Ohio Jury Instructions*, CR Section 421.19 (Rev. Dec. 4, 2021). The OJI for self-defense through non-deadly force reads, in relevant part, as follow:

> **6. AT FAULT. The defendant did not act in (self-defense) (defense of his/her residence) if the state proved beyond a reasonable doubt that the defendant was at fault in creating the (situation) (incident) (argument) that resulted in the injury. The defendant was at fault if the defendant was the initial aggressor and**
>
> **(A) (insert name of victim[s]) did not escalate the (situation) (incident) (argument) by being the first to use or attempt to use (non-deadly force) (deadly force);**
>
> **(B) provoked (insert name of victim[s]) into using force;**
>
> **(C)** *did not withdraw from the (situation) (incident) (argument);*
>
> **\* \* \***

(Emphasis added.) *Id*. In support of Section 6(C) of this instruction, OJI cites to the Ohio Supreme Court's decision in *State v. Melchior*, which states the following:

> **Even though the accused may in the first instance have intentionally brought on the difficulty and provoked the occasion, yet his right of self-defense will revive and his actions will be held justifiable upon the ground of self-defense in all cases where he has withdrawn from the affray or difficulty in good faith as far as he possibly can, and clearly and fairly announced his desire for peace.**

*State v. Melchior*, 56 Ohio St.2d 15, 21, 381 N.E.2d 195, 200 (1978), quoting 1 Wharton's Criminal Law and Procedure 504-505, Section 232. *See State v. Galluzzo*, 2d Dist. Champaign No. 99CA25, 2001 WL 303212, *3 (Mar. 30, 2001); *State v. Ferrell*, 2020-Ohio-6879, 165 N.E.3d 743, ¶ 28 (10th Dist.).[2] In the case presently before us, the trial court appears to have been examining this aspect of the first element for self-defense through non-deadly force.

{¶26} Further, in several of the statements identified above, the trial court was also considering the extent to which the force used by Eddy was applied in self-defense. Under R.C. 2901.05(B)(2), "the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense." R.C. 2901.05(B)(2). *See Dublin v. Starr*, 10th Dist. Franklin No. 21AP-173, 2022-Ohio-2298, ¶ 38. The State can carry the burden of disproving the third element of self-defense through non-deadly force and by establishing that "the defendant used more

---

[2] *Melchior* and *Ferrell* are cases that address self-defense through deadly force. *Melchior, supra,* at 21; *Ferrell, supra,* at ¶ 25. However, as in the Ohio Jury Instructions in CR 421.19, *Galluzzo* applies the reasoning of *Melchior* in the context of self-defense through non-deadly force. *Galluzzo, supra*, at *1-3.

force than was reasonably necessary to defend against the imminent danger of bodily harm." *Jacinto, supra*, at ¶ 46. *State v. Jordan*, 1st Dist. Hamilton No. C-210603, 2022-Ohio-2566, ¶ 55; *State v. Myers*, 5th Dist. Ashland No. 21-COA-025, 2022-Ohio-3337, ¶ 28; *Ohio Jury Instructions* CR Section 421.19 (Rev. Dec. 4, 2021). Thus, the considerations about the amount of force employed by Eddy are not irrelevant to the third element of a self-defense through non-deadly force analysis and are not an indication that the incorrect legal standard was applied in this case.

{¶27} Finally, under the first assignment of error, we concluded that the State disproved the element that requires a defendant "not [to have] be[en] at fault in creating the situation giving rise to the affray." *Chavez, supra*, at ¶ 39, 40. Because the first element of self-defense through deadly force and the first element of self-defense through non-deadly force are identical, the application of either of these two legal standards would yield the exact same result under the facts of this particular case. *Id*. Accordingly, we find this argument to be unpersuasive and ultimately inconsequential.

{¶28} In conclusion, the trial court nowhere indicated that it believed that the legal standard for self-defense through deadly force was applicable or that Eddy had a duty to retreat in this case. The statements identified by Eddy, in fact, represent the application of the legal standard for self-defense through non-deadly force to the circumstances of this case. Having examined the record in its entirety, we find no

indication that the trial court applied the incorrect legal standard for self-defense in this case.   Eddy's first assignment of error is overruled.

*Conclusion*

**{¶29}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Lima Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/hls**